IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY DUNBAR REIFF, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO. 08-CV-05963 |
| CHAD T. MARKS, BOROUGH OF WEST READING, EDWARD FABRIZIANI, AND WEST READING BOROUGH POLICE DEPARTMENT | : : : : | |
| | : | |
| Defendants | : | |

## **MEMORANDUM OPINION**

Before the Court is Defendants' Motion to Dismiss (Doc. No. 13). This is a civil rights action that arises out of a January 5, 2007 encounter between Plaintiff Jeffrey Dunbar Reiff ("Reiff") and Defendant Officer Chad T. Marks of the West Reading Borough Police Department ("Marks"). For the following reasons, the Motion is denied in part and granted in part.

## **Background**

On January 5, 2007, Reiff was operating his motor vehicle in the Borough of West Reading. When he reached the common parking area of his residence, he parked his vehicle, exited from it, and began walking through the common area towards his residence. Shortly thereafter, Marks, a uniformed police officer, drove his patrol car into the common parking area, parked it, thereby blocking Reiff's entrance to/exit from the common area, and exited his patrol car. Based on Marks' belief that Reiff failed to stop his vehicle at a red traffic light prior to arriving and parking in the common area, in violation of the Pennsylvania Motor Vehicle Code, Marks ordered Reiff to stop walking. Reiff did not comply.

In the face of Reiff's noncompliance, Marks fired his taser gun at Reiff. Upon being shot, Reiff seized in place, momentarily paralyzed, and fell to the ground. Then, Marks fired his taser gun at Reiff three more times. Reiff suffered severe bodily injuries, including, but not limited to, a concussion, neurological damage, contusions, abrasions, and scarring. After shooting Reiff with his taser gun, Marks arrested Reiff for driving under the influence, a misdemeanor offense, and for his failure to obey a traffic control device, a summary offense. Reiff was acquitted of both charges. Defendant Chief Edward Fabriziani ("Fabriziani") is the Chief of the West Reading Borough Police Department ("WRBPD"). He did not have any contact with Reiff on the night of the arrest.

Reiff filed the instant, ten-count Complaint (Doc. No. 1). At counts one and four, Reiff alleges that Marks assaulted and falsely imprisoned him. At counts two and three, Reiff also alleges that Marks was deliberately indifferent to his right to bodily integrity under the Fourteenth Amendment and violated his Fourth Amendment[1] right to be free from unreasonable searches and seizures, which includes a prohibition against the use of excessive force during an arrest. Both constitutional injuries are actionable here through Section 1983. As to Defendant Borough of West Reading (the "Borough"), Reiff alleges, at count five, that it is liable for the acts of Marks under the doctrine of respondeat superior because Marks was acting as an agent or employee of the Borough. At count six, Reiff alleges that the Borough is liable for its own failure to educate, train, or otherwise instruct its police officers on the proper use of taser

---

[1] The Fourth Amendment of the United States Constitution is made applicable to the states by operation of the Fourteenth Amendment's Due Process Clause. See, e.g., Maryland v. Pringle, 540 U.S. 366, 370 (2003); Soldal v. Cook County Illinois, 506 U.S.56, 61 (1992); Ker v. California, 374 U.S. 23, 30 (1963); Mapp v. Ohio, 367 U.S. 643, 655-56 (1961).

guns—a constitutional injury actionable here through Section 1983.  As to Fabriziani, Reiff alleges that, like the Borough, he is liable for the acts of Marks under the doctrine of respondeat superior, at count seven, and liable for his  failure as Chief  of the WRBPD to educate, train, or otherwise instruct police officers under his control on the proper use of taser guns, at count eight.  As to "WRBPD", Reiff alleges that, like the Borough and Fabriziani, it is liable for the acts of Marks under the doctrine of respondeat superior, at count nine, and that it is liable in its own right for its failure to educate, train, or otherwise instruct its police officers on the proper use of taser guns, at count ten.  Reiff is seeking compensatory and punitive damages from all Defendants.  He names Marks and Fabriziani in their official and individual capacities in counts one through four, seven, and eight.

Defendants move that the Court dismiss various counts against them for various reasons.  Additionally, Defendants Marks and Fabriziani move that the Court strike references to their home addresses that are set forth in Reiff's Complaint at paragraphs two and four.  Reiff does not object to the redaction of Marks and Fabriziani's home addresses.  (Plf. Br. 12.)  Further, the Court sees no reason why the addresses need to be listed.  Thus, the Court will direct the Clerk to redact the home addresses of Defendants Marks and Fabriziani, which appear in paragraphs two and four of the Complaint, without any further analysis.

**Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

## Analysis

**A.     Official Capacity Claims**

Defendants Marks and Fabriziani move that the Court dismiss all the counts as to them in their official capacities. (Defs. Mot. ¶¶ 1-2.) It is well-settled that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 n.55 (1978); and see Hall v. Raech, No. 08-5020, 2009 WL 811503, at *3 (E.D. Pa. Mar. 25, 2009) (dismissing claims as to township officers in their official capacities in a civil rights action). Reiff admits that the official capacity claims should be dismissed as to Defendants Marks and Fabriziani. (Plf. Resp. ¶¶ 1-2.) As a result, the Court will grant the Defendants' Motion to Dismiss with respect to the claims against Marks and Fabriziani in their official capacities without any further analysis. Therefore, moving forward, all claims against Marks and Fabriziani are construed as claims against them in their individual capacities.

**B.     Count Two    -     As to Marks for a Violation of the Due Process Clause of the Fourteenth Amendment through Section 1983**

Defendant Marks moves that the Court dismiss Reiff's Fourteenth Amendment claim as to him, at count two. Specifically, Marks argues that Reiff is seeking relief in count two for conduct that is based on a violation of the Fourth Amendment's prohibition of unreasonable

search and seizures not the Fourteenth Amendment's substantive due process jurisprudence.  In other words, Marks contends that count two should be dismissed because count three already pleads a violation of the Fourth Amendment, rendering count two duplicative.  The Court agrees.

In his Complaint, Reiff alleges that "Plaintiff has a liberty interest under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to his bodily integrity" and that "Marks' acts, conduct, and/or omissions in the use of the taser gun on [Reiff] was in deliberate indifference to [Reiff's] right to bodily integrity."  (Compl. ¶¶ 38-39.)   However, Reiff cites no caselaw in his opposition brief to the instant Motion to support the proposition that the events alleged implicate substantive due process.  Rather, in opposition to the Defendants' Motion, he simply replies:

> In the case at bar, the Plaintiff possessed a liberty interest to his bodily integrity on January 7, 2007, which interest the Plaintiff contends was intentionally violated by Ofc. Marks' unnecessary use of a taser gun against him during a routine traffic stop.  Because the Plaintiff has plead a cognizable claim for relief against Ofc. Marks under the Fourteenth Amendment Due Process Clause, Count II of the complaint should not be dismissed.

(Plf. Resp. 4.)  The Court cannot and will not credit such a bald assertion of entitlement to relief. Further, the statement fails to explain the legal rationale for allowing the count to remain.

The first step in analyzing any Section 1983 claim is to identify the contours of the underlying right that is said to have been violated.  See Kaucher v. County of Bucks, 435 F.3d 418, 423 (3d Cir. 2006) (affirming district court's refusal to recognize a substantive due process violation based on working conditions within a county prison). When accepting every factual allegation in the Complaint as true, the Court comes to the inescapable conclusion that the civil rights violation alleged in the Complaint and attributable to Marks is based on a violation of the

Fourth Amendment's right to be free from unreasonable searches and seizures, which includes a prohibition against the use of excessive force during an arrest, and the Fourteenth Amendment's substantive due process jurisprudence.[2]

In coming to this conclusion, the Court finds the following facts relevant. First, the interaction between Reiff and Marks was initiated by commands from Marks, a on-duty, uniformed police officer, for Reiff to stop based on Marks' belief that Reiff violated the Motor Vehicle Code. (Compl. ¶¶ 2, 8-9.) Second, the taser gun was fired at Reiff only after he refused to comply with Marks' orders to stop. (Id. ¶¶ 9-10). Third, Marks arrested Reiff immediately after firing his taser gun at him for the suspected violations of the Motor Vehicle Code. (Compl. ¶ 11.) Thus, because Reiff's constitutional claim as to Marks arises out of a seizure, the Court must apply the Fourth Amendment and not the Fourteenth Amendment's substantive due process jurisprudence. See Graham v. Connor, 490 U.S. 386, 395 (1989) (instructing that the Fourth Amendment's reasonableness jurisprudence must be applied to "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest"); see also Martinez v. Chavez, 538 U.S. 760, 773 n.5 (2003) ("Graham foreclosed the use of substantive due process analysis in claims involving the use of excessive force in effecting an arrest and held that such claims are governed solely by the Fourth Amendment's prohibitions against 'unreasonable'

---

[2] While the Court recognizes that police conduct that is not forbidden by any of the explicit amendments of the Bill of Rights may amount to a violation of substantive due process, see County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998) (recognizing that police conduct that is not prohibited under the Fourth Amendment, i.e., conduct that is not attendant to any search or seizure, may constitute a substantive due process violation when the conduct is not forbidden by any other explicit amendment but nevertheless "shocks the conscience"), the Court must follow Graham, infra, and its progeny, which require the Court to analyze the alleged incident under the Fourth Amendment because, regardless of the label or caption, Reiff's factual allegations amount to allegations of excessive force in the context of an arrest.

seizures, because the Fourth Amendment provided the explicit source of constitutional protection against such conduct.") (Thomas, J., joined by Rehnquist, C.J., O'Connor & Scalia, JJ.); Tennessee v. Garner, 471 U.S. 1, 7-22 (1985) (applying the Fourth Amendment to analyze a claim where a fleeing suspect was killed by a police officer); Rivas v. City of Passaic, 365 F.3d 181, 198-99 (3d Cir. 2004) (applying the Fourth Amendment jurisprudence where police officers pushed plaintiff's face in the floor, restrained his arms and legs, and jammed a flashlight in his mouth); Abraham v. Raso, 83 F.3d 279, 288-89 (3d Cir. 1999) (applying the Fourth Amendment where police officer shot and killed a fleeing suspect); Groman v. Twp. of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995) (applying the Fourth Amendment where police officers dragged, stomped, and jumped on plaintiff during arrest and transport of plaintiff); and Wheeler v. City of Philadelphia, 367 F. Supp. 2d 737, 742-45 (E.D. Pa. 2005) (applying Fourth Amendment jurisprudence in a Section 1983 action where police officers used pepper spray and physical force to disarm and handcuff plaintiff who died shortly thereafter). Since Reiff pleads a Fourth Amendment violation against Marks at count three, count two is dismissed as duplicative. See Romig v. Northhampton County Dept. of Corr., No. 06-5309, 2008 WL 818798, at *6 (E.D. Pa. Mar. 21, 2008) (dismissing counts as duplicative).

**C.    Counts Five and Seven    -    As to the Borough and Fabriziani for the acts of Marks under the Doctrine of Respondeat Superior**

The Borough and Fabriziani move that the Court dismiss counts five and seven, which allege their liability for the acts of Marks under the doctrine of respondeat superior. To the extent that counts five and seven are attempting to impose Section 1983 liability vicariously, the counts are dismissed. It is well settled that respondeat superior is not an appropriate theory for

asserting either municipal liability, e.g., as to the Borough at count five, or supervisory liability, e.g., as to Farbriziani at count seven, in Section 1983 litigation. See Monell v. Dept. of Soc. Serv., 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.").

To the extent that counts five and seven are attempting to impose liability on the Borough and Fabriziani for Reiff's alleged intentional tort claims, specifically assault and false imprisonment, under the doctrine of respondeat superior, the counts are also dismissed. With respect to the Borough, the Political Subdivision Tort Claims Act precludes Reiff from holding the Borough liable for the alleged intentional torts because the Act shields "local agencies [from liability for] injuries caused by their own acts or the acts of their employees that constitute crime, actual fraud, malice or willful misconduct[,] or for negligent acts" that are not listed in Subsection (b) of Section 8542 of the Judicial Code.[3] DeBillis v. Kulp, 166 F. Supp. 2d 255, 278 (E.D. Pa. 2001) (dismissing all state law tort claims asserted against city and city's police department in a civil rights action); see also 42 Pa.C.S.A. §§ 8542(b); and Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007) (dismissing intentional tort claims against defendant township based on Section 8542). With respect to Fabriziani, as Chief of WRBPD, he

---

[3] The negligent conduct excepted from the Act's general grant of immunity falls within the following categories: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks and (8) care, custody or control of animals. See 42 Pa.C.S.A. § 8542(b).

generally shares the same immunity enjoyed by the Borough because, "with limited exception, employees enjoy the same broad immunity that their employing agencies enjoy." DeBellis, 166 F. Supp. 2d at 278; see also 42 Pa.C.S.A. § 8545. The limited exception is entitled "Willful Misconduct," and it eliminates the protection the Act gives to employees of local agencies if their conduct constitutes "a crime, actual fraud, actual malice or willful misconduct." Id. at 278-79; see also 42 Pa.C.S.A. § 8550. Here, Reiff does not allege that Fabriziani's conduct either (1) falls within the enumerated categories of negligent conduct in Subsection (b) of 8542 or (2) constitutes a crime, actual fraud, actual malice or wilful misconduct for the purposes of Section 8550. In fact, Reiff does not allege that Fabriziani had any contact with him on the night of the arrest when the torts are alleged to have occurred. Thus, counts five and seven are dismissed.

**D.     Count Six     -     As to the Borough for a Custom, Practice, or Policy of Not Educating, Training, or Otherwise Instructing Police Officers on the Proper Use of Taser Guns through Section 1983**

The Borough moves that the Court dismiss counts six as to it because Reiff failed to allege a Monell claim as to it. The Court disagrees. Municipalities, like the Borough, can be found liable under Section 1983 where the municipality itself caused the constitutional violations at issue. See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (discussing Monell claims in the context of failure to train allegations). In City of Canton v. Harris, the Supreme Court held that municipal liability may exist where "[a] failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact," and that deliberate indifference was the moving force for the violation of the plaintiff's federally protected right. Canton, 489 U.S. at 387-92. Thus, City of Canton v. Harris stands for the proposition that a claim for municipal liability will lie where a plaintiff can identify a particular deficiency in training and prove that the

specific deficiency was the factual and legal cause of his or her constitutional injury.  See also Hall, 2009 WL 811503, at *5 (denying motion to dismiss failure to train claim where plaintiff alleged that municipality failed to train officers in distinguishing between medical emergencies and criminal activity and that the failure caused the plaintiff's constitutional injuries).

Here, Reiff identifies a training deficiency—specifically that the Borough failed to educate, instruct, or otherwise train its police officers, including Marks, with respect to the proper use of taser guns but nonetheless supplied officers with such weapons.  (Compl. ¶ 62.)  As to causation, Reiff alleges that his injuries, including the alleged Fourth Amendment violation at count three, were "directly, proximately, legally, and substantially caused" by a "purposeful custom, practice, and policy of [the Borough] to employ taser guns as aforesaid without regard to the health, safety, and welfare of those upon whom the taser guns are used."  (Id. ¶ 63.)  Taking these allegations as true, count six cannot be dismissed at this stage.

**E.     Count Eight   -     As to Fabriziani for a Custom, Practice, or Policy of Not Educating, Training, or Otherwise Instructing Police Officers With Respect to the Use of Taser Guns through Section 1983**

Fabriziani's argues that he is not a proper defendant to Reiff's failure to train claim.  At this stage in the litigation, the Court disagrees.  The Third Circuit has articulated a test for supervisory liability in Section 1983 lawsuits.

> The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure, created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir.2001) (citing Sample v. Diecks, 885 F.2d

1099 (3d Cir. 1991)).  The Court emphasized that "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did . . . Rather, the plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury." Id. (citations and quotations omitted).

Here, Reiff alleges that Fabriziani, as the Chief of the West Reading Borough Police Department, failed to train, educate, or otherwise instruct the West Reading Borough police officers, including Marks, "on the proper use of said taser gun as well as the effects of the use of said taser gun on individuals" and "nonetheless, not only allowed, but supplied and directed that the taser guns be used . . . without regard to health, safety, and welfare of those upon whom the taser guns are used." (Compl. ¶ 75.)  Next, Reiff alleges that the failure to train, educate, otherwise instruct the police officers on the proper use of the taser guns "directly, proximately, legally, and substantially caused" Reiff's alleged injuries, including the alleged Fourth Amendment violation at count three.  (Id. ¶ 76.)  Taking these allegations as true, Reiff's count eight cannot be dismissed at this stage.

**F.    Counts  Nine and Ten        -      As to WRBPD**

Defendant WRBPD moves that the Court dismiss counts nine and ten as to it because it is not a proper defendant in this action.  The Court agrees with WRBPD's premise.  WRBPD is not a proper defendant in this action because it is the police department of the Defendant Borough. As a result, it cannot be sued in conjunction with the Borough, "as a police department is merely an administrative arm of the local municipality and is not a separate judicial entity."  Odom v. Borough of Taylor, No. 05-0341, 2006 WL 3042974, at *5 (M.D. Pa. Oct. 24, 2006); see also

Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 n. 4 (3d Cir. 1997) (treating a municipality and its police department as a single entity for the purposes of Section 1983); Irvin v. Borough of Darby, 937 F. Supp. 446, 450 (E.D . Pa. 1996).  Thus, counts nine and ten are dismissed.

**G.      Punitive Damages as to all Defendants**

Reiff seeks punitive damages as to all Defendants for all alleged counts.  All Defendants move to strike his claims for punitive damages.  The law on punitive damages in Section 1983 suits is clear.  Municipalities are "immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Thus, the Court will grant Defendants' Motion to Dismiss Reiff's demand for punitive damages as to the Borough at count six.  However, the Court will not dismiss the claims for punitive damages as to Marks and Fabriziani in their individual capacities at counts three and eight because punitive damages are recoverable in individual capacity suits against state actors for conduct exhibiting "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." Smith v. Wade, 461 U.S. 30, 51 (1983).  Further, the Court will also allow Reiff to pursue punitive damages from Marks in his individual capacity at counts one and four because Reiff has satisfied the pleading requirements for recovering punitive damages for the common law torts of assault and false imprisonment.

An appropriate Order shall be entered.